## Coronway v. Lansdowne School District

Before Ervin, P. J., and Sweney, J.

*Edwin E. Lippincott, 2nd,* for plaintiff.

*Frank A. Moorshead,* for defendant.

ERVIN, P. J., and SWENEY, J., November 9, 1950.—
We have for consideration plaintiff's rule to show cause
why a preliminary injunction should not be granted
and defendant's preliminary objections to plaintiff's
complaint in equity. Plaintiff's rule to show cause must
be dismissed and defendant's preliminary objections
sustained.

Plaintiff's complaint alleged that he has been em-
ployed as a full-time teacher in the Lansdowne High
School for more than 20 years, having entered into a
written contract as professional employe in accord-
ance with the terms set forth in section 1121 of the
Public School Code of March 10, 1949, P. L. 30, as
amended, 24 PS §11-1121; that on or about May 17,
1950, the board of school directors of the district
adopted a "salary plan for teachers", a copy of which
is attached to the complaint; that on or about Septem-
ber 20, 1950, he was advised that he would be com-
pelled to serve without compensation as a ticket taker
at a football game scheduled in October 1950; that by
letter dated September 20, 1950, plaintiff advised de-
fendants that he would refuse to perform the extra
services without additional compensation; that on Oc-
tober 10, 1950, he was informed that he was not legally
entitled to the additional compensation for such extra-
curricular assignments and that if he refused to fulfil

them he would be guilty of wilful and persistent negligence; that he and other teachers of the district have been in the past and probably will be in the future compelled to perform certain enumerated nonteaching services and extra work without compensation. He avers that the salary plan and the foregoing extracurricular activities are invalid, illegal and unconstitutional and prays for: (1) A preliminary injunction restraining defendant from compelling him to perform extracurricular activities after school hours or on Saturdays without the payment of reasonable additional compensation and from dismissing or taking any steps toward his dismissal for failure or refusal to perform the same; (2) a perpetual injunction restraining defendant from compelling plaintiff and other full-time teachers to engage in extracurricular activities without reasonable additional compensation and from compelling plaintiff and other teachers to work or teach longer hours than permitted by law; (3) that the salary plan be declared invalid and illegal, and such other equitable relief as the case may require.

As plaintiff alleges in his complaint, the form of his contract was the one required and set forth verbatim in the School Code. As was said in Ganaposki's Case, 332 Pa. 550, at page 552:

"The statutory form of contract does not define teaching duties or those to which a teacher may be assigned."

And again in Teachers' Tenure Act Cases, 329 Pa. 213, at page 230:

"The duties of the school teachers are not defined or created by statute, but arise directly from the contract of hiring entered into by them with the school board."

For this reason alone plaintiff's preliminary injunction may not be granted. It is stated in 43 C. J. S. 552:

"To authorize the issuance of an injunction the terms of the agreement must be so precise that neither party could misunderstand them. . . . If there is grave doubt as to whether the (threatened) acts of defendant actually constitute a breach, an injunction will not issue."

The issue in the present case is what duties plaintiff is required to perform under his contract. It is certainly clear that the terms of the agreement are not "so precise that neither party could misunderstand them". Therefore, plaintiff's rule to show cause why a preliminary injunction should not issue must be dismissed.

On the other hand, defendant's preliminary objections must be sustained. Section 13 of the Act of March 21, 1806, P. L. 558, 46 PS §156, provides:

"In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

It has been held in numerous cases that this act means exactly what it says, and that where a statute provides a remedy for a particular type of case, that remedy is exclusive. It was held in Derry Township School District v. Barnett Coal Company et al., 332 Pa. 174, that equity is not available where a remedy is provided by statute, in view of this section. Turning to the School Code, we find a very detailed outline of the procedure which must be taken step by step before a professional employe may be dismissed by the board of school directors. These are covered by sections 1127 to 1132, inclusive, of the School Code: 24 PS §11-1127 to §11-1132 inclusive. It is interesting

to note that one step in this procedure, as outlined by the legislature, requires an appeal to the Superintendent of Public Instruction prior to any appeal to this court. In a very well considered opinion in Wolf v. Gettysburg Borough School District, 52 D. & C. 520, Sheely, P. J., said:

"The question argued at length by the school district as to the propriety of the salary schedule is not at issue in this proceeding, nor do we think it properly could be. If the plaintiff had been afforded a hearing as required by the Tenure Act, the question of the propriety of the salary schedule and the authority of the board to adopt it would have been an issue in that hearing and testimony could have been taken by both sides. From the decision of the board, the question could have been appealed to the Superintendent of Public Instruction with the right of further appeal to the court. In that proceeding, the court would have had the benefit of the superintendent's opinion and, as the question relates to school policy, that would have been very valuable. Since the Tenure Act provides a method of procedure in cases of dismissal or demotion, the parties are compelled to follow that procedure, and the questions which would properly be raised there cannot be raised in an action of assumpsit."

The wisdom of requiring an appeal to be determined in the first instance by the Superintendent of Public Instruction is further supported by the opinion in Regan et al. v. Stoddard et al., 361 Pa. 469, at page 473, where it was said:

"The court below sustained the preliminary objections and dismissed the Bill of Complaint without leave to amend. In so doing the Court quoted the following from Wilson v. School District of Philadelphia, 328 Pa. 225, 195 A. 90, as follows: 'The courts are in no position to exercise control over schools and determine the policy of school administration; the judges ordinarily

are not equipped for this immense task. The divergent views of the modern educational trends, the different systems advanced for the education of children, the number of students that should be placed in each class so that the advantages of individual attention and instruction might be had, the different grades of instruction based upon mental aptitudes of students,—all these present serious questions which the school board alone can determine, and the employment of an indefinite number of additional instructors would be in their keeping. One factor alone, that of vocational training, with all the expensive equipment accompanying it, necessitates a large number of teachers. All this, being purely administrative, must be left to persons of experience who have made a life study of it, and certainly is not to be subjected to the consideration of jurists who have little or no training to appraise school systems or their necessities.' "

We are particularly glad that such procedure has been established by the legislature because the question involved in this case extends far beyond the narrow confines of this particular plaintiff and this particular school district. It is a matter of construction which will affect the duties and compensation of all the school teachers of the Commonwealth because all of them hold similar contracts. It is unfortunate that the legislature itself did not define the duties of a teacher so that questions of this nature would not become the subject of controversy. We know of no finer groups of persons than the teachers in our public schools and the boards of school directors which administer the School Code. It is well known that teachers are very poorly paid and that the vast majority of them could earn much more in other vocations. On the other hand, the boards of school directors are also public-minded citizens who perform the vast tasks required of them and devote many hours of their time to this public

service without any compensation at all. Both groups are held in high esteem by the court.

Plaintiff argues that the remedy provided by the School Code is not adequate in that it requires him to refuse to perform some assignment before the question of the right of the board to make such assignment can be raised and that he thereby jeopardizes his position in order to be able to raise the question. If this be so, it is unfortunate but it still remains true that the Act of 1806, supra, requires that such procedure shall be exclusive. Without deciding the question, it may be that plaintiff may find relief from his dilemma in Wesenberg Case, 346 Pa. 438. If plaintiff is in a position to claim that the duties assigned him beyond his class instruction duties amount to a demotion, the language in that case might apply. There the court said:

"The amendment dealing with tenure of office (24 PS §1161, now 24 PS §11-1151) provides that 'there shall be no demotion of any professional employe, either in salary or in type of position, without the consent of the said employe, or if such consent is not received, then such demotion shall be subject to the right to a hearing before the Board of School Directors (or Board of Public Education), and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.' Appellee did not invoke that remedy and ask for a hearing on the question of demotion. If he had done so and at the same time assumed the new assignment until final disposition of the question, he could have safeguarded his rights under the statute and avoided the risk of dismissal."

However, in the present stage of the proceedings plaintiff's complaint must be dismissed for the reason that the procedure set forth in the School Code is exclusive.

*Order*

And now, to wit, November 9, 1950, it is ordered, adjudged and decreed:

1. That plaintiff's rule to show cause why a preliminary injunction should not be granted be and the same is dismissed.

2. That defendant's preliminary objections to plaintiff's complaint in equity be and the same are hereby sustained.

3. That plaintiff's bill be and the same is hereby dismissed at the cost of plaintiff.