## Miller v. Northern Tier Career Center

414

C.P. of Bradford County, no. 99CV000458.

*Peter G. Loftus,* for plaintiff.
*Roberta Binder Heath,* for defendant.

MOTT, *J.,* September 11, 2000—Terry L. Miller, the plaintiff, initiated this action by filing a complaint on January 11, 2000. The defendants, Northern Tier Career Center, Vicky E. Dinelli, and Walter A. Becker, filed preliminary objections to the complaint on January 25, 2000.

The facts of this case are as follows: The plaintiff was hired on July 29, 1996, by the Northern Tier Career Center, an educational institution, as a substitute custodian, and continues in that position today. The defendant Becker is the director of the Northern Tier Career Center, and the defendant Dinelli is an administrative assistant at the center. On March 20, 1998, Chuck Murphy, one of the plaintiff's co-workers allegedly pumped settled sludge and waste water into an effluent drain, and, as a result, the waste products were dumped directly into the Susquehanna River. On that same day, the plaintiff al-

legedly reported the pumping of the waste products to the defendant Becker. The plaintiff asserts that he informed the defendant Becker that pumping the waste products into the river was illegal. The plaintiff also avers that Chuck Murphy was not a certified sewage treatment plant operator at the time the waste products were pumped into the river. On May 22, 1998, the plaintiff was certified by the Pennsylvania Department of Environmental Protection (DEP) as a sewer treatment plant operator. On June 9, 1998, the plaintiff allegedly forwarded a request in writing to the defendant Becker, seeking an adjustment in his job title and in his hourly wage. The plaintiff's job title has not been changed, and he avers that he is entitled to such an adjustment. The plaintiff avers that because he reported the pumping of the waste products into the river, he has not received the adjustment in his job title, and has been subjected to a hostile and harassing working environment by the defendants.

In Count I of the complaint, the plaintiff alleges, relying upon the Whistleblower Law of December 12, 1986, P.L. 1559, no. 169, section 1 et seq., as amended, 43 P.S. §1421 et seq., that the defendants retaliated against him for reporting the pumping of the waste products into the river. In Count II, the plaintiff alleges that the defendants violated what he calls the "Privacy Act."

The defendants' preliminary objections include a motion to strike the claim for punitive damages contained in Count I of the complaint. This motion will be granted.

"Section 1425 of the Whistleblower Law provides that a court may order 'reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combi-

nation of these remedies.' Furthermore, a court 'may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees.' Finally, under section 1426 of the Whistleblower Law, a 'person who, under color of an employee's authority, violates this act shall be liable for a civil fine of not more than $500 and, under certain circumstances, suspended from public service.' Nowhere among these remedies does the Whistleblower Law mention punitive damages. Nor does this omission appear to be an oversight on the part of the General Assembly. The statute sets forth a comprehensive list of available remedies, ranging from back wages and reinstatement to damages and attorney's fees to civil fines and suspension. Such a detailed list of remedies suggests that the General Assembly carefully considered the relief it deemed appropriate and set forth in the statute an exhaustive list of remedies it thought necessary or desirable to achieve the statute's purposes. Furthermore, the General Assembly did not include punitive damages among this list, but instead chose to use the phrase 'actual damages,' which generally connotes compensatory damages. Moreover, it seems rather implausible that a General Assembly contemplating 'actual damages' would simply overlook the possibility that punitive damages (or treble damages or some other variant) could also be added to the mix. Thus, the omission of punitive damages from sections 1425 and 1426 [leads to the conclusion] that the General Assembly deliberately chose not to extend this remedy to plaintiffs under the Whistleblower Law. Moreover, a contrary result would conflict with the directions of both the General Assembly and the Pennsylvania Supreme Court that statutory remedies must generally be construed

as exclusive. See 1 [Pa.C.S. §1504] ('In all cases where a remedy is provided . . . by any statute, the directions of the statute shall be strictly construed, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.'); *In re 1632 A. Broad St.,* 372 Pa. 557, 94 A.2d 772, 773 (1953) (when a statute provides a remedy by which a right may be enforced, no other remedy than that afforded by the statute can be used) (quoting *Derry Township School District v. Barnett Coal Co.,* 332 Pa. 174, 2 A.2d 758, 760 (1938)). Thus, . . . punitive damages are not an available remedy under the Whistleblower Law." *Rankin v. City of Philadelphia,* 963 F. Supp. 463, 478-79 (E.D. Pa. 1997). Thus, the plaintiff's claim for punitive damages will be stricken.

The defendants' preliminary objections also include a motion to strike the plaintiff's demand for a jury trial on Count I of the complaint. There is no provision for a jury trial in the Whistleblower Law. *Wilhelm v. Borough of Braddock,* 28 D.&C.4th 211, 213 (1996); *Clark v. Lancaster City Housing Authority,* 14 D.&C.4th 411, 412-13 (1992); 43 P.S. §1421 et seq. We also emphasize that we have located no Pennsylvania appellate case which holds that a plaintiff has a right to a jury trial under that law. Normally, "jury trials are not available in proceedings created by statute unless the statute so provides, or unless the proceeding has a basis in common law." *In re: Albert C. Friedman,* 72 Pa. Commw. 274, 283, 457 A.2d 983, 988 (1983); see also, *Murphy v. Cartex Corporation,* 377 Pa. Super. 181, 192, 546 A.2d 1217, 1222 (1988). Therefore, the motion to strike will be granted, and the plaintiff's demand for a jury trial on Count I of the complaint will be stricken.

The defendants' preliminary objections also include a motion for a more specific pleading relating to Count I of the complaint. We agree that the plaintiff has failed to set forth with specificity the exact nature of the retaliatory conduct he is attempting to allege and when it occurred. As a result, the motion will be granted. The plaintiff must clarify these ambiguities in any future complaint. Pa.R.C.P. 1028(a)(3).

The defendants' preliminary objections also include a demurrer pursuant to Pa.R.C.P. 1028(a)(4). The defendants ask the Court to strike paragraph 17 of the complaint because it constitutes only an allegation of possible future retaliation. We agree. The averments contained in paragraph 17 are insufficiently pleaded. We cannot even determine from the phraseology of the paragraph just what the plaintiff alleges the defendant Becker did. Did he simply inform the plaintiff that the school may close the sewer plant, in which case, the demurrer may be well-founded, or did he inform the plaintiff of that *and* that if that happened the plaintiff would be terminated rather than the person in maintenance, in which case the demurrer may not be well-founded? Exactly what retaliatory conduct on the part of the defendants is the plaintiff alleging in this paragraph? Therefore, the demurrer will be sustained.

The defendants' preliminary objections also include a motion for a more specific pleading relating to Count II of the complaint. Pa.R.C.P. 1028(a)(3). The plaintiff states in his brief that Count II sets forth a cause of action under either 5 U.S.C. §552(b) or 12 U.S.C. §3401 et seq. However, 5 U.S.C. §552(b) pertains to open meetings, and 12 U.S.C. §3401 et seq. pertains to financial institutions. A brief perusal of Count II of the complaint

demonstrates that the plaintiff has failed to set forth, with specificity, material facts sufficient to support a cause of action for invasion of privacy under either of these federal statutes. Moreover, Count II of the complaint could be construed as attempting to assert more than one cause of action, without ever specifying one. Each separate cause of action must be stated in a separate count setting forth only that cause of action. Pa.R.C.P. 1020(a). Each count must state the specific facts supporting the claim asserted in that count, and each count must state the basis on which the plaintiff asserts liability against the defendants. As a result we will grant the motion for a more specific pleading.

Finally, the defendants' preliminary objections also include a demurrer to Count II of the complaint. The defendants assert that the plaintiff has failed to furnish facts sufficient to sustain the claim for punitive damages made in Count II. We agree. The plaintiff has provided no facts which would demonstrate that the defendants' conduct was outrageous. *Schecter v. Watkins,* 395 Pa. Super. 363, 383-84, 577 A.2d 585, 595 (1990). Hence, the demurrer will be sustained.

Accordingly, we enter the following:

## ORDER

And now, September 11, 2000, in accord with the memorandum opinion filed this date, the defendants' preliminary objections are sustained, and the plaintiff's complaint is dismissed. The plaintiff shall have 20 days from the date of this order to file an amended complaint, consistent with today's opinion.